UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RICKEY NELSON JONES** | * | |
| | * | |
|     **Plaintiff,** | * | |
| | * | |
| **v.** | * | Civil Action No.: 15-CV-3336 CCB |
| | * | |
| **ADMINISTRATIVE OFFICE OF** | * | |
|   **THE COURTS, MARYLAND** | * | |
|   **JUDICIARY** | * | |
| | * | |
|     **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY
JUDGMENT  &  CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Rickey Nelson Jones, through undersigned counsel, pursuant to Fed. R. Civ. Proc., Rule 12, and Local Rule 105, responds to Defendant's motion to dismiss and moves for summary judgment.  As grounds therefor, he presents the following facts, law, and memorandum of law:

FACTS

Defendant Mischaracterizes Its Constitutional Identity

& Consequently Undermines Its Argument

    1.    Defendant has presented itself as {a} state circuit court judges and

        {b} an office without authority or control over anything of

        substance herein.  Both representations overlook who is the true

        Defendant in this case.

2. According to the Maryland Constitution (with Amendments to January 1, 2015), Article IV: Judiciary Department, Section 1, "[T]he Judicial power of this State **is vested in** a Court of Appeals, such intermediate courts of appeal …, Circuit Courts, Orphans' Courts, and a District Court." (emphasis added)

3. According to the Maryland Constitution (with Amendments to January 1, 2015), Article IV: Judiciary Department, Section 1A, "The several Courts existing in this State … shall continue with like powers and jurisdiction, and in the exercise thereof, both at Law and in Equity, in all respects.

4. According to the Maryland Constitution (with Amendments to January 1, 2015), Article IV: Judiciary Department, Section 14, "The jurisdiction of the Court of Appeals shall be **co-extensive** with the limits of the State and such as now is or may hereafter be prescribed by law." (emphasis added)

5. According to the Maryland Constitution (with Amendments to January 1, 2015), Article IV: Judiciary Department, Section 18, "The Court of Appeals from time to time shall adopt **rules and regulations concerning the practice and procedure in and the administration of** the appellate courts **and** in the other courts of

this State, which shall have the force of law….” (emphasis added)

6. The Maryland Constitution explicitly reveals that the judicial power does not operate "out of thin air." It is exercised by the State via its various courts and the applicable rules and regulations, one such regulation being the job of the Administrative Office of the Courts ("AOC") in providing the means for determining qualified judges to serve.

7. With the Court of Appeals' jurisdiction being co-extensive with the State, the Maryland Judiciary (i.e., Court of Appeals[1]) and its AOC are "one and the same" with the State of Maryland.

8. Defendant's self-identification as circuit court judges and an office without authority is constitutionally incorrect. Hence, the basis for their motion disintegrates.

9. Further, the December 2014 letter to the Governor from the AOC that was forwarded to Plaintiff also solidifies the oneness of the Defendant entities with the State of Maryland in that it {i} possesses the Seal of the State of Maryland, and {ii} informs the Chief Judge of the Court of Appeals of its work <u>on behalf</u> of the

---

[1] Plaintiff's reference to "Maryland Judiciary" is the Court of Appeals, and he filed a motion to amend complaint to eliminate any and all confusion therein.

        Maryland Judiciary/State of Maryland.  <u>See</u>. Attached Exhibits "A & B"

10. Finally, as outlined in the Memorandum of Law below, Plaintiff stands on a solid legal basis in his Complaint and such warrants summary judgment in his favor.

## LAW

<u>State of Maryland</u>

11. Maryland Annotated Code, State Government Article Sec. 20-601(d)(2) provides that "Employer" includes the State.

12. Maryland Annotated Code, State Government Article, Sec. 20-606(a)(2) provides that an employer may not "limit, segregate, or classify" its applicants for employment in any way that would deprive any individual of employment opportunities because of the individual's race.

13. It is the policy of the State of Maryland to "assure all persons equal opportunities in receiving employment … regardless of race." Maryland Annotated Code, State Government Article, Sec. 20-602.

14. Discrimination is prohibited by statute in the State of Maryland, and that prohibition applies to persons acting through State agencies, boards, commissions, offices, etc.

Federal Law

15.  42 U.S.C. Sec. 2000e-2(a)(1)(2) provides as follows: "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) <u>to limit</u>, segregate, or classify his employees or <u>applicant for employment</u> in <u>any way</u> which would <u>deprive or tend to deprive</u> any individual of <u>employment opportunities</u> or otherwise adversely affect his status as an employee, <u>because of</u> such individual's <u>race</u>, color, religion, sex, or national origin." (emphasis added)

16.  42 U.S.C. Sec. 2000e-2(k) provides as follow: "An unlawful employment practice based on disparate impact is established under this subchapter only if – (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity;…."

17. Disparate impact claims involve employment practices which are facially neutral in treating different groups but in fact fall more harshly on one group than another and cannot be justified by business necessity.  <u>International Brotherhood of Teamsters v. United States Inc v. United States</u>, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

<u>Disparate Impact</u>

18. The State of Maryland via its Court of Appeals through regulations operating in the AOC has succeeded in excluding qualified African Americans from the Circuit Court for Anne Arundel County such that throughout the county's 366-year history, only two African Americans have served, and none serve presently. <u>See</u>. Anne Arundel County Webpage's Historical Roster of Judges of the Circuit Court for Anne Arundel County (Exhibit "C") and Plaintiff's Affidavit (Exhibit "D")

<u>Disparate Treatment</u>

19. Further, the process used by the AOC in 2014 {i} used race to exclude an African-American Member of its Trial Courts Judicial Nominating Committee ("TCJNC") when Plaintiff (an African-American Candidate) was being interviewed and {ii} recommended Caucasians to the Governor who did not possess

the diversity of legal experience of Plaintiff or his recognized legal scholarship.  <u>See</u>. Attached Exhibit "D"

**WHEREFORE,** Plaintiff respectfully requests that Defendants' motion to dismiss or for summary judgment be denied and Plaintiff's cross motion for summary judgment be granted.

                                              Respectfully submitted,

                                       /s/   *Rickey Nelson Jones*
                                  Rickey Nelson Jones
                                  Law Offices of Reverend Rickey
                                          Nelson Jones, Esquire
                                  3rd Floor – Suite 5
                                  1701 Madison Avenue
                                  Baltimore, Maryland 21217
                                  410-462-5800
                                  Bar #: 12088

                                  *Attorney for Plaintiff*

<u>MEMORANDUM OF LAW</u>

As an "Employer" per its own statute, the State of Maryland is subject to both its own statutory prohibition against employment discrimination and federal law prohibition against employment discrimination. Maryland Annotated Code, State Government Article Sec. 20-601, Article Sec. 20-602, & Article Sec. 20-606; 42 U.S.C. Sec. 2000e-2(a)(1)(2). The Maryland Court of Appeals (highest court), as early as 1977, made it clear in <u>State Commission on Human Relations v. Mayor and City Council of Baltimore</u>, 280 Md. 35, 371 A.2d 645 (1977) that the Maryland Code, Art. 49B, tracks verbatim the language of Title VII of the Civil Rights Act of 1964, and in 1972 when Congress enacted the Equal Employment Opportunity Act and expanded the definition of "person" to include governments and governmental agencies and political subdivisions (plus defining "employer" as one employing 15 or more employees and deleting exclusion from coverage for "a State"), Maryland followed suit in its 1973 General Assembly and redefined "employer" similarly. Hence, Maryland's anti-discrimination law mimics federal anti-discrimination law, and applying federal Title VII case law governs in Maryland.

Due to the need to provide a context for Plaintiff's disparate treatment complaint, the disparate impact of the operation of the TCJNC in Anne Arundel County will be addressed first.

<u>Disparate Impact</u>

Disparate impact claims involve employment practices that are facially neutral in their treatment of different groups but that fall more harshly on one group than another, without justification for business necessity. <u>International Brotherhood of Teamsters v. United States Inc v. United States</u>, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); 42 U.S.C. Sec. 2000e-2(k). In proving disparate impact, statistical analysis serves an important role, particularly in grave imbalances to the detriment of members of protected groups. <u>International Brotherhood of Teamsters</u>, 431 U.S. at 339. The primary purpose of Title VII is to assure equality of employment opportunities and eliminate discriminatory practices and devices that aid racially stratified job environments, harming minority citizens. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 800. Further, the primary objective of Title VII is prophylactic, namely, to achieve equal employment opportunity and remove the barriers that have operated in favor of white employees over others. <u>Griggs</u>, 401 U.S. at 429.

On October 12, 1995, Governor Parris N. Glendening appointed the first African American in Anne Arundel County history to the Circuit Court. *See. October 13, 1995 Baltimore Sun Article entitled "Black, woman named to Anne Arundel bench Appointment are firsts for county Circuit Court."* Thereafter, only one other African American was ever appointed, namely, Rodney C. Warren. See. Attached Exhibit "C." Despite decades of qualified African Americans applying for vacancies on the Circuit Court in Anne Arundel County, since 1837, Defendant has a 99%-plus success rate in "locking" them out. Of the fifty-four judges who have serve over the span of 179 years, two African Americans served for a total of 9 years. Statistically, regarding number of judges, three hundredths of one percent (0.03) served. Statistically, regarding number of years, five hundredths of one percent (0.05) was the time. The United States Supreme Court has said that it will repeatedly approve of the use of statistical proof where the exclusion of protected members reach the proportions addressed in the Teamsters' Case, i.e., African Americans in better jobs there only constituted 0.4% (much greater than the statistical exclusion of African Americans from the Circuit Court for Anne Arundel County). International Brotherhood of Teamsters, 431 U.S. at 339. In 2014, four qualified African American attorneys applied for two vacancies, specifically, the Plaintiff, Keith J. Gross, Gloria S. W. Shelton, and Ginina J. Stevens. Along with the Plaintiff, two others possessed over 20 years of legal experience. None were recommended to the Governor. See. Exhibit "D". The TCJNC's facially neutral process of guiding qualified candidates to the Governor for appointment to the bench has become the precise barrier operating in favor of white applicants that was explicitly condemned in International Brotherhood of Teamsters. With Title VII, Congress proscribed all practices that are fair on the surface but discriminatory in operation. Griggs v. Duke Power Co. 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2df 158 (1971). In theory, a judicial nominating commission should evaluate in a color-blind manner and provide the best qualified for consideration by the Governor, but in practice in Maryland, race has illegally "entered" the evaluation process in result and historical fact, contaminating any recommendation. In finding that Duke Power Company's requirements of {i} completing high school and {ii} passing a general intelligence test did not bear a demonstrable relationship to successful performance of the jobs for which they were used, hence violating Title VII, the Supreme Court of the United States said the following, "[G]ood intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability." Griggs, 401 U.S. at 432. Hence, the intent behind the process that discriminates cannot govern. The process for nomination of judicial appointees through Appellate and Trial Courts Judicial

Nominating Commissions was initiated in 1970. <u>See</u>. Exhibit "E." On August 29, 2007, Chief Judge Robert M. Bell issued a Revised Administrative Order adopting rules of procedure for appellate and trial courts judicial nominating commissions. In that Order (Exhibit "E"), the second paragraph reveals the futility of Defendant's argument on page 5 of its memorandum that "the decision to appoint a judge rests with the Governor." The second paragraph of the Order states, "WHEREAS, the Governor desires that the Commission operate in accordance with rules prescribed through Administrative Order;" In other words, the recommendations by the TCJNCs serve as the Governor's guide of the most qualified and best selections for him to choose from. In fact, any dismissal of the recommendations by the Governor defies logic due to that office's expressed desire in the Administrative Order. The process is so entrenched for determining who serves as judge on the circuit courts that the roles of the Court of Appeals, AOC, TCJNC, and Governor are of little consequence for Title VII purposes. Needless to say, prior to 1970, judges were selected for vacancies without the judicial nominating process, establishing the process is not necessary for measuring job capability or for business necessity. The statistics show a history of a facially neutral process which excludes members of the Title VII Protected Class. The exclusion is gross, resting in the hundredth-percentile range. The nominating process for the Circuit Court in Anne Arundel County has accomplished "falling more harshly on one group than another" by presently resulting in a circuit court that is all white, despite a county with a minority population near one third. <u>See</u>. 2014 U.S. Census Statistics for Anne Arundel County, Maryland. There could be no better illustration of a discriminatory practice that aids racially stratified job environments, harming minority citizens. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973). It seems impossible to view the TCJNC process in Maryland for Anne Arundel County as legal without ignoring indisputable statistics and facts indicative of the exclusion of members of the protected class found in violation of Title VII in <u>International Brotherhood of Teamsters v. United States Inc v. United States</u>, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

<u>Disparate Treatment</u>

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973) provides the established order of proof in a private, non-class, action challenging employment discrimination. We know that the complainant must prove {i} he belongs to a racial minority, {ii} that he applied and was qualified for a job for which the employer was seeking applicants, {iii} that despite his qualifications, he was rejected, and {iv} after rejection, the

position remained open (or was filled by a non-minority).  THEN, the employer must articulate some legitimate, nondiscriminatory, reason for the rejection.  Finally, the complainant must be afforded a fair opportunity to show that the employer's stated reason for rejection was in fact pretext.  McDonnell Douglas Corp., 36 L.Ed. 2d at 677-679.   Since the McDonnell Douglas Corp. decision, the United States Supreme Court has provided some clarity on proving discrimination.  It said the following in International Brotherhood of Teamsters v. United States Inc v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), "We expressly noted that '(t)he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from (a plaintiff) is not necessarily applicable in every respect to differing factual situations…. The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." International Brotherhood of Teamsters, 431 U.S. at 358.  Furthermore, in reversing the District Court's decertification of a class of minority workers alleging promotion discrimination, the United States Court of Appeals for the 4th Circuit gave us some guidance regarding disparate impact and disparate treatment.  It said, "Unlike a disparate impact claim, a showing of disparate treatment does not require the identification of a specific employment policy responsible for the discrimination…. A pattern of discrimination, revealed through statistics and anecdotal evidence, can alone support a disparate treatment claim, even where the pattern is the result of discretionary decision-making." Brown v. Nucor Corp. (4th Cir., 2015), 45.

When {i} an African-American Member of the TCJNC was removed from the interview of Plaintiff (namely, a Ms. Tracey Parker Warren), {ii} she had no affiliation whatsoever with Plaintiff, {iii} she was a member of the TCJNC for 2014, and {iv} the only reason discovered for her absence was her familiarity with another African-American Candidate, a decision was made along racial lines to limit Plaintiff's opportunity to receive the votes needed to receive recommendation to the Governor for appointment to the Circuit Court for Anne Arundel County.  The likelihood of Plaintiff's appointment by Governor O'Malley was near certain in light of his expressed preference for diversity on the bench (See. Exhibit "F") and the absence of diversity on the Circuit Court for Anne Arundel County in 2014.  Yes, the excluded member's presence on the commission during Plaintiff's interview would not guarantee her vote for him, but more significant for Title VII purposes is the fact that she was removed due to her common race with the Plaintiff.  What is the TCJNC

doing using race "at all" for exclusionary purposes when it is wholly irrelevant in evaluating Plaintiff's qualifications?  Further, since Plaintiff and the excluded member were complete strangers to one another, a very significant fact emerges implicating Title VII violations.  That fact is as follows: if every white member of the commission was not removed for every white candidate being interviewed, it is impossible to articulate a <u>legitimate</u>, nondiscriminatory, reason for the exclusion of Ms. Warren from Plaintiff's interview![2]  Since the voting of the commission members is a secret, the elimination of any member from the process is gigantic.  One vote could be the determinative vote between recommendation and non-recommendation to the Governor.  Consistent with the aforementioned 2015 case of <u>Brown v. Nucor Corp.</u>, the statistics provided herein (showing the gross exclusion of African-American Candidates from the Circuit Court for Anne Arundel County) also serve to prove Plaintiff's claim of disparate treatment by the TCJNC.  More proof is in this manner:  the TCJNC {I} made a decision along racial lines illegitimately, {II} excluded a racial minority member improperly, {III} limited an African-American Candidate's opportunity undoubtedly, {IV} did this in the midst of the evaluation of Plaintiff's judicial qualifications clearly, and {V} contributed to his non-recommendation to the Governor unquestionably.   Combined with the statistics outlined herein, this act cannot legitimately be explained as a non-discriminatory decision.  Additionally, there is no doubt that Plaintiff is an African American, well qualified, was excluded, and the position was eventually given to white applicants.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973).  The statistics buttress the illegal device/process used in Maryland to select its judges for the Circuit Court in Anne Arundel County and highlight the offence to Title VII committed by the TCJNC.  The removal of the African-American Member of the commission by its white chairman because of shared race with Plaintiff is proof positive of how race has infected this process so deeply that such behavior occurred without any effective opposition.  If not for Plaintiff interviewing earlier in 2014, the absence of the African-American Member on the commission would not have been recognized, and the exclusionary process would have proceeded with the next white candidates recommended to the Governor, unopposed.

     The 2014 candidates recommended to the Governor further expose the disparate treatment of Plaintiff by Maryland's TCJNC.  Per the candidates' own social media Linked-In Profile, one was working in the House of Delegates and

---

[2] Every white member of the commission was unquestionably not removed since the commission would have vanished due to nearly every member being white.  Also, recommendations were made to the Governor, proving such did not happen.

had only been in private practice for about 2 years.  The other was in private practice for over two decades but engaged in limited practice areas.  Both spent substantial time under the guidance of other attorneys.   The 2007 Revised Administrative Order of Chief Judge Robert M. Bell required the judicial nominating commission to find individuals "most fully professionally qualified."  <u>See</u>. Exhibit "E," part 5(d).  Plaintiff's legal experience is rich, diverse, and expansive.  Plaintiff has not only run a multi-state law office for nearly 25 years, but he has {i} represented individuals and businesses, {ii} done civil, criminal, administrative, and appellate law, {iii} represented people or businesses in other states, {iv} practiced state and federal law, {v} been published by multiple bar associations, {vi} served as panelists on multiple Continuing Legal Education Panels covering multiple areas of the law, and {vii} served the less fortunate in Maryland extensively as a leader of a church (Exhibit "G").  The rich and diverse legal experience of Plaintiff (as well as community service) is not "second" to the candidates recommended to the Governor in 2014 and arguably not "second" to any candidate ever recommended to the Governor in the history of the State of Maryland.  To wit, the device/process used by Maryland in evaluating Plaintiff injected race "into the picture" when it was irrelevant, causing his exclusion when he should have been included.  A high percentage of candidates recommended to the Governor get appointed and remain on the bench following election.  The American Judicature Society reports in "Judicial Selection in the States: Maryland" that circuit court judges are usually unopposed for reelection and the "sitting judge principle" is endorsed by {i} the central committees of the Republican and Democratic Parties of Maryland, {ii} the MSBA, and {iii} the AFL-CIO.  In light of this, appointed circuit court judges rarely get removed from the bench.  Hence, any arguments that recommendation and appointment are not determinative due to the need for an election are weak.  Plaintiff's exclusion occurred at the "infant" stage in his quest to serve as a judge in Anne Arundel County, and hence, the TCJNC killed his employment opportunity "in the crib," along racial lines.  This is the exact treatment Title VII was designed to stop since its purpose is "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."  <u>Griggs</u>, 401 U.S. at 429.

    **WHEREFORE,** Plaintiff requests that Defendant's motion to dismiss be Denied and Plaintiff's cross motion for summary judgment be Granted, awarding all relief outlined in his Complaint.

                                      Respectfully submitted,
                                         /s/   <u>*Rickey Nelson Jones*</u>

                                        Rickey Nelson Jones
                                        Law Offices of Reverend Rickey
                                              Nelson Jones, Esquire
                                        3rd Floor – Suite 5
                                        1701 Madison Avenue
                                        Baltimore, Maryland 21217
                                        410-462-5800
                                        Bar #: 12088

                                        *Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **RICKEY NELSON JONES** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No.: 15-CV-336 CCB |
| | * |
| **ADMINISTRATIVE OFFICE OF** | * |
| **THE COURTS, MARYLAND** | * |
| **JUDICIARY** | * |
| | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER**

Upon consideration of "Plaintiff's Response to Defendant's Motion To Dismiss Or In The Alternative For Summary Judgment & Cross Motion for Summary Judgment," it is this ____ day of _____, 2016, by the United States District Court for the District of Maryland,

**ORDERED** that Defendants' motion to dismiss or alternatively for summary judgment be, and hereby is, **DENIED**, and

**ORDERED** that Plaintiff's cross motion for summary judgment be, and hereby is, **GRANTED,** and all relief requested be awarded.   OR ALTERNATIVELY FOR RELIEF, that a hearing be set to determine damages on the ___ day of _____, 2016.

                                                    _____
                                                    Catherine C. Blake
                                                    Chief Judge
                                                    United States District Court